UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CYNTHIA LUTTRELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-02192-JMS-TAB |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Cynthia Luttrell filed an applications for disability insurance benefits on October 11, 2013, [Filing No. 13-5 at 2], alleging a disability onset date of December 23, 2009, [Filing No. 13-6 at 2]. Her applications were denied initially, [Filing No. 13-3 at 2], and upon reconsideration, [Filing No. 13-3 at 12]. Administrative Law Judge Kimberly Sorg-Graves ("ALJ") held a hearing on August 10, 2015. [Filing No. 13-2 at 35-71.] On September 22, 2015, the ALJ issued an opinion concluding that Ms. Luttrell was not disabled as defined by the Social Security Act. [Filing No. 13-2 at 11-28.] The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision subject to judicial review. [Filing No. 13-2 at 2-8.] Ms. Luttrell timely filed her Complaint pursuant to 42 U.S.C. § 405(g), asking this Court to review her denial of benefits. [Filing No. 1.]

**I.**
**STANDARD OF REVIEW**

"The Social Security Act authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second it requires

an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists to support the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [her] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, [she] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [she] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and, if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Ms. Luttrell was 47 years old at the time she applied for Social Security benefits. [Filing No. 13-5 at 2.] She holds several college degrees, [Filing No. 13-2 at 41], and previously worked as an administrative assistant and an IT contractor, [Filing No. 13-6 at 64; Filing No. 13-2 at 42-43.][1]

---

[1] Both parties provided a detailed description of Ms. Luttrell's medical history and treatment in their briefs. [Filing No. 15; Filing No. 18.] Because that discussion implicates sensitive and otherwise confidential medical information concerning Ms. Luttrell, the Court will simply incorporate those facts by reference herein and only detail specific facts as necessary to address the parties' arguments.

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Ms. Luttrell is not disabled. [Filing No. 13-2 at 11-28.] The ALJ found as follows:

- At Step One, the ALJ found that Ms. Luttrell has not engaged in substantial gainful activity since December 23, 2009, the alleged onset date. [Filing No. 13-2 at 16.]

- At Step Two, the ALJ found that Ms. Luttrell has the following severe impairments: "degenerative disc disease of the lumbar spine; degenerative joint disease of the left upper extremity; arthritis of the bilateral knees; and obesity." [Filing No. 13-2 at 16.]

- At Step Three, the ALJ found that Ms. Luttrell does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [Filing No. 13-2 at 19-20.]

- After Step Three but before Step Four, the ALJ found that Ms. Luttrell has the RFC to

    perform a range of light work defined as follows: lifting and carrying twenty pounds occasionally and ten pounds frequently; sitting, standing, and/or walking six hours in an eight-hour workday; no climbing ladders, ropes, or scaffolds; occasional climbing ramps and stairs; occasional bending, stooping, kneeling, crouching, and crawling; no more than occasional reaching and fingering with the left upper extremity; and no more than frequent handing with the left upper extremity.

    [Filing No. 13-2 at 2 (citation omitted).]

- At Step Four, after considering Ms. Luttrell's age, education, work experience, and RFC, and relying on the testimony of the vocational expert ("VE"), the ALJ concluded that Ms. Luttrell is capable of performing her past relevant work as "information systems manager and data base administrator," as generally performed in the economy. [Filing No. 13-2 at 27-28.] The ALJ concluded on that basis that Ms. Luttrell was not disabled, [Filing No. 13-2 at 28], and therefore did not proceed to Step Five.

4

Ms. Luttrell asked the Appeals Council to review the ALJ's decision, but that request was denied, making the ALJ's decision the final decision of the Commissioner subject to judicial review. [Filing No. 13-2 at 2-8.] Ms. Luttrell timely filed this civil action pursuant to 42 U.S.C § 405(g), asking the Court to review her denial of benefits. [Filing No. 1.]

## III.
### DISCUSSION

Ms. Luttrell argues that the ALJ improperly resolved several factual issues against her which resulted in an erroneous RFC. [Filing No. 15 at 14-17.] Specifically, Ms. Luttrell argues that the ALJ improperly discredited Ms. Luttrell's testimony; credited the state agency reviewing physicians; discredited her primary care physician's opinion; and attributed minimal weight to evidence that she has difficulties sitting, standing, and walking. Ms. Luttrell also argues that the RFC assessed does not support full-time work.

The Court begins by addressing Ms. Luttrell's challenges to the ALJ's credibility assessment before summarily addressing the remaining issues.

### A. Credibility

Ms. Luttrell argues that the ALJ relied on several improper bases in concluding that she was "not entirely credible." [Filing No. 13-2 at 21.] Specifically, Ms. Luttrell argues that the ALJ improperly relied on the inability to verify her testimony of daily activities, discredited her for continuing to look for jobs, and minimized her complaints of toe numbness for failure to visit a neurologist. [Filing No. 15 at 14-17.]

In response, the Commissioner argues that the ALJ properly followed the regulations in assessing Ms. Luttrell's subjective complaints. [Filing No. 18 at 7-9.] The Commissioner also argues that the ALJ's observations regarding daily activities and work interest were not inappropriate. [Filing No. 18 at 9-11.]

5

Ms. Luttrell reiterates her arguments in reply. [Filing No. 19 at 5-6.]

The Seventh Circuit has explained that the ALJ's credibility assessment generally receives "special deference because the ALJ is in the best position to see and hear the witness and determine credibility." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000). This rule is not absolute, however, and a court has "greater freedom to review credibility determinations based on objective factors . . . rather than subjective considerations," *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 354 (7th Cir. 2005). Among the factors an ALJ may consider in evaluating credibility are daily activities, nature of pain, and use of medication or other treatment. *See* 20 C.F.R. § 404.1529(c)(3). The ALJ may not disregard a claimant's testimony about her impairments "solely because [it is] not substantiated by objective medical evidence," S.S.R. 96-7p, 1996 WL 374186,[2] but instead must resolve any "discrepancies between the objective evidence and self-reports," *Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010). An ALJ's credibility determination may be overturned only if it lacks reason or support, such that it is "patently wrong." *Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir. 2008).

In recent years, the Seventh Circuit has identified various unreasonable inferences that are frequently relied upon by ALJs in discrediting a claimant's allegations—several of which feature in the ALJ's opinion in this case. First, the ALJ discredited Ms. Luttrell's difficulties with daily activities because they "cannot be objectively verified with any reasonable certainty." The Seventh Circuit has noted the inappropriateness of this reasoning:

> Whatever uncertainty may exist around such self-reports is not by itself reason to discount them—otherwise, why ask in the first place? . . . By the ALJ's reasoning, the agency could ignore applicants' claims of severe pain simply because such subjective states are impossible to verify with complete certainty, yet the law is to the contrary.

---

[2]Social Security Ruling 96-7p was superseded in March 2016 by Social Security Ruling 16-3p, 2016 WL 1119029, but remains in effect because S.S.R. 16-3p was not retroactive.

*Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014). The ALJ's reasoning on this point was improper.[3]

Second, the ALJ discredited Ms. Luttrell based upon her work history, as follows:

> The claimant's work history also reflects poorly on her overall credibility. During her psychological consultative examination, she attributed many of her physical limitations to motor vehicle accidents that occurred in 2004 and 2006 (Ex. 5F at 2). However, she admitted that she did not stop working until 2009 (Ex. 5F at 2). When asked why she left her job, she stated that she moved, and she tried to find a better paying job (Ex. 5F at 2). She indicated that she had not yet found a better paying job (Ex. 5F at 2). In a function report, the claimant stated that she spent part of her day looking at job postings and submitting applications (Ex. 6E). During her hearing, the claimant initially testified that she could not work due to her impairments (Testimony). However, she then provided contradictory testimony, noting that she was unable to obtain or retain employment because she was a female and other various reasons (Testimony). She insinuated that she was unable to obtain a job in her field of expertise, and as such, she did not take a lower level job (Testimony). Overall, the claimant's employment history, as well as her ongoing search for employment, weighs against her credibility. It suggests that she is out of work due to outside factors, rather than true disabling impairments.

[Filing No. 13-2 at 25.]

In part, the ALJ discredited Ms. Luttrell for engaging in an "ongoing search for employment." [Filing No. 13-2 at 25.] But, as the Seventh Circuit has explained, the ALJ's "logic is backward: a claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability. And, as we have explained, a claimant's desire to work is not inconsistent with her inability to work because of a disability." *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015).

Perhaps the ALJ's decision to discredit Ms. Luttrell based upon her employment history could stand on her other observations, such as "[Ms. Luttrell] provided contradictory testimony, noting that she was unable to obtain or retain employment because she was a female and other

---

[3] The third-party function report submitted by a friend of Ms. Luttrell was disregarded for the same improper reason and for the additional improper reason that the friend was "unfamiliar with the [SSA's] requirements." [Filing No. 13-2 at 24.] The third-party report corroborates Ms. Luttrell's allegations and should likewise be reconsidered on remand.

7

various reasons." [Filing No. 13-2 at 25.] But these observations are contradicted by the hearing record. Rather, the only testimony regarding Ms. Luttrell's inability to find work specifically blamed her difficulties on her impairments. For example, Ms. Luttrell testified that she had to "use a walker just to have balance and stability" while at interviews; could not type "75 words a minute" due to her hand condition, which was especially detrimental to her work in information technology; and was unable "to pick up 50 pounds, which is a standard weight because you lift and move computer equipment[] and stuff." [Filing No. 13-2 at 51.] Ms. Luttrell blamed her inability to get a job on the fact that she "[couldn't] even meet a basic requirement for the field I'm in" due to disability, [Filing No. 13-2 at 51]—not, as the ALJ erroneously found, "because she was a female and other various reasons," [Filing No. 13-2 at 25.] At most, the evidence establishes that Ms. Luttrell engaged in several failed attempts to rejoin the workforce. "Actually those [efforts to find work] were consistent with h[er] wanting to lead a normal life yet being unable to land a job because [s]he's disabled from gainful employment . . . ." *Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015). Moreover, the ALJ's mischaracterization of the record further undermines her credibility assessment. Ms. Luttrell should not have been discredited for attempting to work despite her physical limitations.

Finally, the ALJ apparently discounted Ms. Luttrell's evidence of right foot numbness on the basis that she failed to follow through with a referral to a neurologist. [Filing No. 13-2 at 23.] But the ALJ is required to "explore[] the claimant's explanations as to the lack of" medical treatment before making an adverse credibility finding. *Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014). Ms. Luttrell's uncontroverted testimony at the hearing demonstrates that she did not attend the neurologist as referred because she was "waiting to get approval for my insurance." [Filing No. 13-2 at 57.] The ALJ failed to even mention this explanation, and thus failed to

articulate a reasoned basis for discrediting Ms. Luttrell's evidence of numbness. Along these same lines, the Court is additionally concerned by the ALJ's decision to discredit Ms. Luttrell for never receiving "more aggressive narcotic medications." [Filing No. 13-2 at 25.] There are many reasons one may not be prescribed "aggressive" narcotics, not the least of which is the high risk of addiction and misuse. *See, e.g.*, Drug Enforcement Administration, Drugs of Abuse (2017 ed.) 39, *available at* https://www.dea.gov/pr/multimedia-library/publications/drug_of_abuse.pdf. Even if the ALJ's larger observations about "conservative" treatment may have been permissible, the ALJ's statement about aggressive narcotics was not, particularly without any evidence as to why one not prescribed. *Cf. Beardsley*, 758 F.3d at 840.

Perhaps individually each of these improper inferences would not warrant reversal. But in the aggregate, they amount to reversible error. The Court cannot be "confident that the ALJ would have reached the same conclusion about [Ms. Luttrell's] credibility" had she not relied upon these flawed inferences. *Hill*, 807 F.3d at 869. Remand is therefore required to allow the ALJ to reassess Ms. Luttrell's testimony regarding her pain and physical limitations.

### B. Remaining Issues

Because the Court has already concluded that remand is required for the ALJ to reconsider Ms. Luttrell's testimony, the Court summarily addresses the remaining issues raised by Ms. Luttrell.

First, Ms. Luttrell argues that the ALJ improperly relied upon the outdated opinion of the state agency reviewing physician, citing in particular new evidence of knee and spine injections and a prescription for a walker. [Filing No. 15 at 16.] The ALJ gave the reviewing physician's January 2014 opinion "significant weight," finding that any new evidence was not "widely different" from the evidence available to the reviewing physician. [Filing No. 13-2 at 24.]

9

However, in addition to the evidence cited by Ms. Luttrell, the ALJ also independently assessed a May 2015 MRI which, the ALJ noted, showed "degenerative facet arthropathy" and "degenerative disc changes." [Filing No. 13-2 at 23.] Moreover, Ms. Luttrell testified that her conditions have worsened over time, [Filing No. 13-2 at 52 ("It got more and more difficult to stand for extended period of time, sit for extended period of time . . . .")], and other recent evidence shows that she is experiencing numbness in her right foot, [Filing No. 13-10 at 16]. The ALJ improperly assessed the new medical evidence on her own, "playing doctor (a clear no-no, as [the Seventh Circuit has] noted on numerous occasions)." *Goins v. Colvin*, 734 F.3d 677, 680 (7th Cir. 2014). That some of the new evidence also showed signs of potential improvement, as pointed out by the Commissioner and the ALJ, does not change this conclusion. At least some of the new evidence corroborates Ms. Luttrell's complaints, and the ALJ therefore committed reversible error by relying on the outdated reviewing physician's opinion. *See, e.g.*, *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (requiring remand where new evidence could "reasonably change the reviewing physician's opinion").

Next, Ms. Luttrell argues that the ALJ erred by giving minimal weight to her primary care physician's opinion and otherwise discrediting the evidence that she has difficulties sitting, standing, and walking. [Filing No. 15 at 14-16.] The ALJ should reevaluate the primary care physician's opinion on remand in light of the other issues addressed above. Ms. Luttrell's other complaints focus on the ALJ's decision not to fully credit evidence showing that she had pain when she moved her knees and walked with a limp due to pain (an "antalgic gait"). [Filing No. 15 at 14.] But the ALJ addressed both evidence of a painful limp and evidence demonstrating that Ms. Luttrell could walk normally and experienced improvement with medication, and arrived at a

reasonable conclusion based upon that discussion.[4] [Filing No. 13-2 at 21-25.] Nonetheless, the ALJ will be required to reevaluate these conditions on remand in light of the other evidence the ALJ improperly discredited, giving particular attention to evidence suggesting that Ms. Luttrell's conditions may have worsened. As explained above, Ms. Luttrell has been diagnosed with "degenerative" conditions, which means that they will likely degrade over time. *See, e.g.*, *Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015) (concluding that the ALJ may not ignore the fact that degenerative conditions "get worse over time").

Finally, Ms. Luttrell argues that the RFC assessed by the ALJ does not support full-time work. The ALJ limited Ms. Luttrell to "sitting, standing, and/or walking six hours in an eight-hour workday." [Filing No. 13-2 at 2.] The parties dispute whether this means that Ms. Luttrell may only work for six hours a day, as all fulltime work requires sitting, standing, and walking in some combination for eight hours. The Court agrees that this RFC restriction is confusing, and should be clarified by the ALJ on remand.

### IV.
#### CONCLUSION

For the reasons detailed herein, the Court **VACATES** the ALJ's decision denying Ms. Luttrell's benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4) as detailed above. Final judgment will issue accordingly.

Date: 1/25/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

---

[4] The ALJ relied upon the same evidence, as well as evidence that Ms. Luttrell did not always have a cane or walker at medical appointments, to conclude that a cane or walker was not medically necessary. [Filing No. 13-2 at 26.] On remand, the ALJ should revisit this conclusion and address Ms. Luttrell's explanation from her hearing for why she did not have a walker at certain visits. [Filing No. 13-2 at 58 (explaining that she did not bring the walker to a couple of visits because the "stoppers" on her walker were broken).]

**Distribution via ECF only to all counsel of record**